## WOOD *against* CHAPIN.

A deed, the execution of which is neither acknowledged or attested by a subscribing witness, is valid, as between the parties, and takes effect, as to prior purchasers or incumbrancers, at the time of its execution.

The statute which declares that such a deed shall not take effect, as against purchasers or incumbrancers, until acknowledged (1 *R. S.*, 738, § 137), refers to *subsequent* purchasers and incumbrancers.

A *bona fide* purchaser of land for a valuable consideration, whose deed is first recorded, is protected against a prior unrecorded conveyance, although his grantor purchased with notice thereof.

And a purchaser from one who is protected by the recording act against a prior unrecorded conveyance is himself entitled to such protection, notwithstanding he purchased with notice of the prior conveyance, or without parting with a valuable consideration.

To protect a purchaser against a prior unrecorded conveyance of the same land executed by the original owner, it is not requisite that all the intermediate conveyances forming his chain of title should be recorded.

The acknowledgment of the receipt of the purchase money in a deed is *prima facie* evidence that the grantor is a purchaser for a valuable consideration, under the recording act.

A creditor who purchases land at a sale, by virtue of legal proceedings instituted to collect his debt, is a purchaser for a valuable consideration, within the recording act, although the entire purchase price, except so much as is required to satisfy the expenses of the proceedings, is applied in payment of the debt.[1]

The statute requiring the officer, before whom proceedings are had against an absconding, concealed or non-resident debtor, to make and file his report within twenty days after the appointment of trustees, and the latter to cause their appointment to be recorded within thirty days ( 2 *R. S.*, 12, §§ 61, 68), is directory merely, and an omission to comply with these requirements within the prescribed time will not vitiate the proceedings or invalidate a conveyance of property made by the trustees.

The appointment of trustees and the report of the officer making the same in such proceeding are, by force of the statute (2 *R. S.*, 13, §§ 62, 68), evidence in favor of a party deriving title from the trustees that the proceedings stated therein were had.

To constitute a valid conveyance, by way of bargain and sale, there must be a valuable consideration expressed in the deed, or proved independent of it, and where a sufficient consideration is expressed, it cannot be disproved to invalidate the deed. *Per* DENIO, J.

---

[1] See *Wood* v. *Morehouse*, 45 N. Y. 376. *Bolton* v. *Jacks*, 6 Rob. 166 234.

THIS was an action of trespass, commenced in the supreme court prior to July, 1848, for breaking the plaintiff's close, and cutting and carrying away trees and timber. Plea, not guilty. The premises were wild and uncultivated lands, lying in Steuben county, and the question was as to the legal title. William Helm was the source of title under whom both parties claimed the premises; and he, on the 11th August, 1826, conveyed the same, being a tract of 470 acres, to George W. Fitzhugh, by a quit claim deed, expressed to be in consideration of $1; and the deed, having been acknowledged, was recorded in Steuben county, on the 3d of November, 1827. Fitzhugh and his wife, on the 15th of September, 1835, conveyed the premises to Priestly Thornton, by a deed expressed to be given in consideration of $2000, the payment of which was acknowledged in the deed. This deed was given in evidence upon proof of the signature of the grantor, it having no subscribing witness, and never having been acknowledged or recorded. On the 15th of December, 1836, Thornton conveyed the land to Benjamin H. Smith. This deed was expressed to be in consideration of $2000 paid, and was acknowledged; and it was recorded on the 30th of May, 1837. The deed from Fitzhugh to Thronton, after describing the premises, stated that they were the same conveyed by Helm to Fitzhugh, by deed dated the 11th of August, 1826; and the deeds from Thornton to Smith and from the trustees to the plaintiff, respectively, in describing the premises, referred to each of the deeds by date, forming the chain of title from Helm to the respective grantors. The plaintiff claimed to have acquired Smith's title by virtue of proceedings under the Revised Statutes respecting absent and absconding debtors. These proceedings were commenced before Judge Inglis, of the New-York common pleas, on the 14th of January, 1840 by the plaintiff and two other persons, as joint creditors of Smith, who it was alleged resided in Virginia. The application under oath and the affidavits of two disinterested wit-

Wood *against* Chapin.

nesses were given in evidence without objection. The notice to the debtor, with proof of publication and all the papers contemplated by the statute, were produced, with the exception of the warrant of attachment. The return of the sheriff of Steuben county was among the papers proved, but instead of being made upon or annexed to the warrant, it was a separate paper, containing the title of the proceedings, and referring to an attachment issued by Judge Inglis as the authority by which the sheriff acted and to which the return professed to be made. It set forth that the sheriff had attached the tract of 470 acres of land in controversy, which was described; that it had been appraised by two freeholders, who were named, whose appraisement was annexed. No other property was seized upon the attachment. The appointment of trustees recited all the proceedings, including the issuing of the attachment; it was dated 14th January, 1841, and was recorded on the 10th day of May, in that year. The report of the judge also recited the attachment and proceedings, and bore date the 10th of February, 1841, and was filed the 4th of March in the same year. The defendant's counsel objected to the proceedings, on account of the absence of the attachment, and because the appointment of trustees and the judge's report were not recorded and filed within the time required by the statute; but the objections were overruled, and the defendant excepted.

The plaintiff then gave in evidence a conveyance from the trustees to himself, as the purchaser of the land in controversy, reciting that due notice of the sale had been given, according to the statute, and that the plaintiff was the highest bidder at such sale, which was at public auction, pursuant to the notice, at the court-house, in Steuben county, his bid being $305. The plaintiff also proved, independently of the deed, that the notice of sale required by the statute had been published in a newspaper printed in Steuben county. This deed acknowledged the payment

by the plaintiff to the trustees of the $305, the amount of the bid. The defendant's counsel objected that the proof of notice of sale was insufficient, and that it was incumbent upon the plaintiff to prove the fact of a sale in addition to the conveyance; but the judge overruled the objection, and held that the plaintiff had made out title to the premises in himself. and the defendant again excepted. The plaintiff also proved the cutting of timber by the defendant upon the premises, and rested.

After a motion for a nonsuit, grounded upon the position that the plaintiff had not established a title in himself, had been overruled, the defendant, having excepted to the decision, introduced and proved the execution of a power of attorney from William Helm to Ziba A. Leland and Daniel G. Skinner, dated November 30th 1825, authorizing them to take possession of all of Helm's real estate and to sell and convey the same, and to take possession of his personal estate, and to sue for the same. The defendant then gave in evidence another instrument of the same date with the power of attorney, executed under the hand and seal of Helm, in the following words: " Whereas, I, William Helm, have, by an instrument bearing even date herewith, constituted and appointed Ziba A. Leland and Daniel G. Skinner my agents and attorneys, to take possession, sell and dispose of, sue for and recover all my estate, both real and personal, and all obligations, claims, demands and causes of action whatever, either in law or equity, in the State of New-York: Now, know all men that I hereby revoke all former powers or authority heretofore given, and I hereby covenant and agree that the said Leland and Skinner shall have a lien on my said property for all expense and trouble incurred by them in my said business, or any advances by them made or to be made to me; and I do hereby covenant and agree that they shall have one-half of all my said property, and I do hereby convey the same to them, their heirs and assigns forever; excepting, I am to have the property I now live

Wood *against* Chapin.

on, and the property bid off for me in Hornellsville, containing five hundred acres, situate on the turnpike by Dugald Cameron, and the property bid off for me by said Cameron, in Canisteo, after all expenses and incumbrances are paid off as aforesaid; and if the same shall be sold, I am to have the avails thereof, under the exceptions as aforesaid, and the residuary one-half of my property, after paying off all expenses in obtaining possession and disposing of the same, or expenses otherwise incurred by me or advances to me, I am to have. Signed and sealed," &c. The defendant then gave in evidence an instrument by which Skinner released to Leland all his interest in and power under the foregoing instruments. These papers, except the last one, were proved and recorded after the commencement of this suit. They were objected to by the plaintiff's counsel, as not tending to prove a defence, and because they were not recorded until after the recording of the plaintiff's deed, and an exception was taken to the ruling, receiving the same in evidence.

It was shown that Fitzhugh was a grandson of Helm and that when the above mentioned conveyance from Helm to him was executed, he knew of the existence and contents of the two instruments executed by Helm to Leland and Skinner. It appeared that Helm died in 1829.

Leland was examined as a witness for the defendant, and proved an executory contract, made in 1848 from himself to the defendant, for the sale and conveyance of a portion of the lands embraced in the conveyances given in evidence by the plaintiff, and it appeared that the timber was cut upon the land described in that contract. Leland proved that he and Skinner advanced to Helm, *after* the execution of the papers above mentioned, from $1000 to $1500, and that they had instituted several suits in his behalf.

The defendant's counsel finally insisted that the evidence showed the title to the premises to be in Leland. He contended that the plaintiff was not entitled to any advantage

under the recording acts, for the reason that it was not shown that he or those under whom he claimed title were *bona fide* purchasers for value. The judge held otherwise, and the plaintiff had a verdict, and the defendant's counsel excepted.

Judgment was entered in favor of the plaintiff, which was affirmed at a general term of the supreme court in the 7th district, upon which the defendant brought this appeal.

*Z. A. Leland*, for the appellant.

*S. Beardsley*, for the respondent.

DENIO, C. J. The question presented in this case is strictly one of legal title. The plaintiff deduced a good paper title from William Helm, who is admitted to have been the owner in fee of the premises, unless one or more of the objections interposed by the defendant to the evidence are well taken.

*First.* The deed from Fitzhugh was not acknowledged, and there was no subscribing witness to it, and consequently it had never been recorded. It is urged that this defect rendered it void. (1 *R. S.*, 738, § 137.) It was, however, effectual to transfer title as between the parties to it. It would be invalid, as against a subsequent purchaser from or an incumbrancer under Helm. But the defendant does not occupy such a position.

*Second.* The plaintiff claims to have acquired the title of Smith, by means of a proceeding under the statute, respecting non-resident debtors, and the regularity of that proceeding is questioned. The plaintiff proved the application and oath of witnesses required by the statute, the order for the publication of notice to creditors, and the fact of such publication. (2 *R. S.*, 2, §§ 2 *to* 6.) He also gave in evidence the appointment of trustees, and proved that they took the oath prescribed by the statute. The first mentioned papers were sufficient to show jurisdiction in the officer, and the

act declares that the trustees taking such oath shall be deemed vested with all the estate, real and personal, of the debtor, from the first publication of the notice to him. (1 *R. S.*, 41, § 6.)   It is also declared that the appointment of trustees shall be conclusive evidence that the debtor therein named was a concealed, absconding or non-resident debtor, and that the said appointment and all the proceedings previous thereto were regular.  (*Id.*, 13, § 62.)   It has been held that this language must be qualified by a condition that the case is one in which the officer had acquired jurisdiction.  (*Van Alstyne* v. *Erwine*, 1 *Kern.*, 331, *and cases cited.*)   Jurisdiction being shown in this case, we are bound to hold that the appointment of trustees furnishes conclusive, that is, incontrovertible evidence, that all the other proceedings were in accordance with the statute, and that all the property of which the debtor was seized and possessed at the time of the first publication of the notice, was by operation of law vested in the trustees.   It was the duty of the trustees to have caused their appointment to be recorded within one month after it was made, and this duty they neglected to perform until nearly three months after the time it should have been done.   But the object of this provision was simply to perpetuate the evidence of the transaction, and it cannot be pretended that an omission in this respect would divest the title which had thus been acquired, and render the whole proceeding nugatory.   The original appointment of trustees was given in evidence ; and should it be held that a record made out of time would not be evidence, it would not affect the validity of the original document.   The same remark may be made respecting the report of the judge.   If the officer had failed altogether in performing this duty, it would not divest the title of the trustees. (*Chautauque Bank* v. *Risley*, 4 *Denio*, 484.)

*Third.*  The defendant's counsel insists that it was incumbent upon the plaintiff to prove the fact of a sale by the trustees to himself.   The trustees being clothed with the

title to the land, any conveyance by them which would, by the common law, pass the title, would be effectual wherever the question of title should arise collaterally. The rule would be different, if they had possessed only a power to sell and convey the premises, for in such cases all the formalities required by law must, in general, be observed, or nothing is effected. In this case the premises were shown to have been advertised for sale for the period required by the statute, and the conveyance set forth that due notice of the sale had been given, and that the plaintiff became the purchaser upon a sale at auction. We do not say that the recitals are evidence; but if it were essential to the validity of the conveyance that the purchase should have been made at auction, we are of opinion that the presumption of the due performance of official duty would be *prima facie* sufficient to show that it had been done. Where a levy is necessary, in order to give a sheriff authority to sell real estate, the court will presume it to have been made where it is found that he has sold and conveyed the land. (*Jackson* v. *Shaffer*, 11 *John.*, 513.) I am of opinion that the plaintiff made out a *prima facie* case, showing title in himself.

The defendant attempted to show title out of the plaintiff and in Z. A. Leland, under whom he entered and cut the timber. The most favorable view for the defendant which can be taken of the instrument given in evidence by him, is to consider it a conveyance of an undivided half of all Helm's property, and an equitable mortgage of the other half, to secure any future advances which Leland and Skinner might see fit to make. It would clearly be a conveyance of an undivided moiety of Helm's property, but for the want of a consideration. But no consideration was expressed in the paper, and none was proved outside of it. Leland and Skinner did not undertake to advance anything. They did not execute the deed, and there are no expressions in it by which they were bound to do anything in conse-

quence of their acceptance of it, or which would have amounted to a covenant on their part if they had executed it; and there was no collateral agreement, verbal or written, by which they undertook to advance anything to Helm, or to do anything for him. If the deed had any operation, it was by way of bargain and sale, under the statute of uses. No livery of seizin is pretended to have been given, and there was no relationship between the parties as is necessary to support a covenant to stand seized. A bargain and sale, before the statute of uses, rested on the goodness of the consideration, and hence it was that a consideration became the great point upon which deeds of conveyance turned, which were invented after the statute in order to raise and convey uses. (*Reeves' His. of the Eng. Law, pp.* 162, 163, 353, 355; *The Rector of Cheddington's case*, 1 *Rep.*, 154; *Wiseman's case*, 2 *id.*, 15; *Sheppard's Touchstone, ch.* 10. *p.* 5.) It is perfectly well settled in this state that, to constitute a good conveyance by way of bargain and sale, there must be a valuable consideration expressed in the deed or proved independently of it. If one is expressed, no proof of its actual payment need be given, and it cannot be controverted by evidence, and it is sufficient, though the amount be merely nominal. (*Jackson* v. *Alexander*, 3 *John.*, 484; *Jackson* v. *Fish*, 10 *id.*, 456; *Jackson* v. *Florence*, 16 *id.*, 47; *Jackson* v. *Sebring, id.*, 515; *Jackson* v. *Cadwell*, 1 *Cow.*, 622.) It is no doubt true that the insertion of a consideration has become a mere ceremonial observance. It is, however, a form required by law, where there is no evidence of an actual consideration, and we have no more right to dispense with it than with any other legal requirement. I am of opinion, therefore, that the deed was void for the want of a consideration. It was executed before the enactment of the Revised Statutes, and we are not therefore called upon to consider the effect of the provision which the legislature has made respecting grants of freehold estates. (1 *R. S.*, 738, §§ 136, 137.)

3 KERN.—33

But whatever might have been the effect of the deed to Leland and Skinner at the common law, I am of opinion that it has become invalid, as against the plaintiff, by the operation of the recording acts. Helm, the source of title, conveyed to Fitzhugh, and he conveyed to Thornton. Neither of these grantees could hold the land against the prior grantees of Helm, for the former had knowledge of the prior deed and the latter did not cause his deed to be recorded. But Thornton conveyed to Smith for a pecuniary consideration expressed in the deed, and acknowledged to have been paid, and Smith put his deed on record. Smith was not prejudiced by the knowledge which Fitzhugh had of the conveyance to Leland and Skinner. If one affected with notice conveys to another without notice, the latter is as much protected as if no notice to either had ever existed. (*Jackson* v. *Given*, 8 *John.*, 137; *Varick* v. *Briggs*, 6 *Paige*, 322, 329.) Smith acquired Fitzhugh's title, by means of the conveyance of the latter to Thornton and of Thornton's conveyance to him, as effectually as though Fitzhugh had conveyed directly to Smith. It was unnecessary for the plaintiff to prove that Smith paid a consideration. The acknowledgment in the deed of the payment of a consideration is, uncontradicted, sufficient evidence of the fact of such payment. (*Jackson* v. *McChesney*, 7 *Cow.*, 360.) If Smith acquired a good title against Leland and Skinner by virtue of the recording acts, as I have shown he did, the plaintiff would be entitled to protection, though he had purchased with full notice of the prior deed. It is not material, therefore, to consider whether the plaintiff's purchase, under the attachment proceedings instituted by himself, constituted him a *bona fide* purchaser within the construction which has been given to the recording acts. It is enough that the purchase from the trustees gave him the title which Smith had. Smith's title being perfect against Leland and Skinner, the plaintiff, being clothed with that title, can hold the land against them. (*Varick* v. *Briggs*,

*supra ; Jackson* v. *McChesney, supra.*) I am, moreover, of opinion that a purchaser, under judicial proceedings instituted by himself, though the purchase be made on account of the debt for the recovery of which the proceedings were had, is a *bona fide* purchaser within the statute. The legal expenses necessarily incurred, which have to be advanced by the party promoting the proceeding, are something in addition to the existing debt which the purchaser had parted with as a consideration for the conveyance which he receives.

If these views are correct, the case was properly disposed of in the supreme court, and the judgment appealed from should be affirmed.

COMSTOCK, J. The defendant committed the trespasses complained of, claiming under a contract for the purchase of the land from Leland, dated March 4, 1848. Assuming that the instruments executed by Helm to Leland and . Skinner on the 30th of November, 1825, conveyed to them a title or an interest (Leland having afterwards purchased of Skinner), then the question arises whether the plaintiff is protected in his title under the recording act as a *bona fide* purchaser.

Fitzhugh, the immediate subsequent grantee of Helm, would not be protected against the prior unrecorded grant to Leland and Skinner, for the reason that he had actual notice of their title. Neither would Thornton, the grantee of Fitzhugh, be protected, because his conveyance was never duly recorded. A subsequent purchaser takes no benefit under the recording act, unless his deed is first recorded. The deeds, however, from Thornton to Smith, and from the trustees of Smith, as a non-resident debtor, to the plaintiff, were duly recorded before the instruments above mentioned from Helm to Leland and Skinner. The plaintiff has, therefore, complied with that condition of the

statute, and his title must prevail against Leland's, unless there is some other difficulty in the way.

There is no difficulty arising out of any actual notice of the adverse title. The notice which Fitzhugh, the immediate grantee of Helm, had, does not affect any one purchasing under him without notice (*Jackson* v. *Elstin*, 12 *John.*, 452; *Varick* v. *Briggs*, 6 *Paige*, 323; 8 *Cow.*, 260); and it is not pretended that the plaintiff, or Smith, whose title he has acquired, were not *bona fide* purchasers, so far as this point is concerned.

It is said that all the conveyances, from Helm down to the plaintiff, must be recorded before the prior one to Leland and Skinner, in order to bring the case within the recording act; and inasmuch as the deed from Fitzhugh to Thornton, constituting one link in the chain, does not appear on the records, it is insisted that Leland's title must prevail. It is true, I believe, that under the statute a prior recorded deed is notice only to a subsequent purchaser from or under the same grantor, and consequently that such a purchaser only is within the protection of the statute, if the prior deed is not recorded (6 *Hill*, 469; 1 *John. Ch. R.*, 566; 2 *Barb. Ch. R.*, 151); but I do not find any authority for saying that all the conveyances in the chain of the junior title must be recorded, when the last grantee asserting such title is himself a purchaser in good faith and has his own deed recorded in due time. In the present case, the plaintiff not only traces his title in fact back to Helm, the common source. but the record shows Helm to have been the source, although one of the conveyances in the series is not recorded. The deeds from the trustees of Smith to the plaintiff, and from Thornton to Smith, which were duly recorded, both describe the premises as conveyed by Helm to Fitzhugh, and by Fitzhugh to Thornton on the 15th of September, 1835; the deed to Thornton being the one not on record. If, therefore, the plaintiff examined the title when he purchased, the record would carry him back to Helm, as the

Wood *against* Chapin.

origin. The plaintiff, therefore, I have no doubt, must be regarded as a subsequent purchaser under the same grantor as Leland, and having first recorded his own deed, he is protected both by the letter and policy of the act.

But a subsequent grantee, to entitle himself to the benefit of the statute, must not only buy without notice, and put his deed first on record, but he must also purchase for a valuable consideration. I think the plaintiff must be regarded as such a purchaser. He and two others were jointly the attaching creditors of Smith, and on the sale of the premises by the trustees, he alone was the bidder and buyer. There was no other property attached and sold, and consequently all the expenses of the proceeding were payable out of this bid. Beyond that, the plaintiff either paid the money over to the trustees, or applied his bid in extinguishment of so much of the debt, and in that case he was of course accountable to his associates for two-thirds of the amount. His relations were, therefore, changed by the transaction, and he must be deemed a purchaser for a valuable consideration.

Some objections were made on the trial to the validity of the proceedings on the attachment against Smith, under which the plaintiff claims title. One of these was that the appointment of the trustees was not recorded within one month from the time it was made, as the statute requires. (2 *R. S.*, 12, § 61.) Another was that the report of the judge before whom the proceedings were had was not made and filed within the time directed. (*Id.*, 13, § 68.) These statutes are directory merely, and the omission to comply with them strictly does not vitiate the proceedings. Another objection was that the attachment itself was not shown. But the judge's report of the proceedings recited the process as issued by him in due form, and the statute declares that such report " shall be conclusive evidence that the proceedings stated therein were had " before the officer. Such being the effect given by statute to the report of the judge,

it was unnecessary to go behind it for proof of any matter therein set forth. Some other objections were mentioned, but they do not require a special consideration. On examination of the proceedings, and comparing them with the statutes under which they were had, there appears to be no doubt of their validity.

The point was made on the trial that the deed from Fitzhugh to Thornton, constituting one of the links in the plaintiff's title, was void, as against the title of Leland, on the ground that it was not duly acknowledged and had no attesting witness. The statute (1 *R. S.*, 738, § 137) declares that a deed "not so attested shall not take effect, as against a purchaser or incumbrancer, until so acknowledged." Such a deed is, however, good between the parties to it, and we think it is only a subsequent purchaser or incumbrancer who can take the objection. If the formalities of attestation or acknowledgment had been duly attended to, still the prior conveyance (if such we call it) to Leland and Skinner would prevail, but for the operation of the recording statute. The section referred to clearly implies that the deed would take effect against a purchaser or incumbrancer, if acknowledged or attested; but as such could not be the effect, as against a prior conveyance or incumbrance, the inference would seem to be plain that the statute has no application to such a case.

Some other questions were presented on the argument, but if they were all determined in the defendant's favor it would not change the result. Under the views which have been stated the plaintiff made out a title to the premises, and the finding and judgment in his favor were therefore right.

The judgment should be affirmed.

HUBBARD, J. The plaintiff is entitled to recover in this action, provided he or any one through whom he derived title can be regarded as a purchaser of the premises on which

Wood *against* Chapin.

the trespass was committed, in good faith and for a valuable consideration. Whatever estate Leland may have had, whether an absolute title to one-half, and a power coupled with an interest as to the other half, or whether the power extended to the entire premises, it was equally subject to the operation of the registry act.

The question then is, was the plaintiff or his predecessors in title, or any of them, a *bona fide* purchaser for a valuable consideration? The plaintiff can stand upon his own purchase or that of any one through whom he traces title back to the common source. If any one of them stands in the attitude of a *bona fide* purchaser, and is entitled to the protection of the registry act, then the plaintiff should recover, as the conveyance to Leland and Skinner was not recorded until after those under which plaintiff derives title, with the exception of the one to Thornton.

Fitzhugh was not a *bona fide* purchaser; he had actual knowledge of the outstanding conveyance to Leland and Skinner. The conveyance to Thornton was never recorded, and he, therefore, would not be protected against the prior conveyance. But Thornton conveyed to Smith, from whom the plaintiff immediately derives title. This conveyance, which is in the ordinary form, expresses a consideration of $2000, and was properly acknowledged and recorded. There is no pretence that Smith knew of any outstanding title or equity in Leland and Skinner. He purchased in good faith, and the receipt of the consideration in the deed of his grantor is *prima facie* evidence of payment of the sum expressed. ( *Jackson* v. *McChesney*, 7 *Cow.*, 360.) Under the recording act, therefore, Smith was presumptively a *bona fide* purchaser for a valuable consideration, and the plaintiff succeeded to all his rights. The premises being wild and unoccupied land until after the time the plaintiff acquired his title, there is no ground for any constructive notice of an outstanding title.

It was insisted upon the argument that the plaintiff's title must fail because of the want of a link in the chain; because the deed from Fitzhugh to Thornton was not acknowledged and had no subscribing witness, as required by the statute. (1 *R. S.*, 738, § 137.) The delivery of the deed signed by Fitzhugh was not disputed. It seems to me that neither the defendant or Leland and Skinner stand in a position to raise any question under the statute. The statute only applies to subsequent purchasers, and not to those deriving title from the main grantor prior in time.

A conveyance which has no subscribing witness, and which is not acknowledged at the time of its delivery, is not rendered *ipso facto* void by the statute; it is simply declared to have no effect, as against a purchaser or incumbrancer, until acknowledged. The deed operates to transfer the title, as between the parties, subject to rights subsequently acquired by third persons.

In view of the right of the plaintiff under the title of Smith, it may not be essential to inquire whether he can himself be regarded a *bona fide* purchaser for a valuable consideration. There is no suggestion that his purchase was not in good faith; that he was not entirely ignorant of any claim or title outstanding. As to the consideration paid, I do not see any reason why the receipt of the payment of the consideration expressed in his deed from the trustees in the insolvent proceedings against Smith, should not have the same force and effect as the receipt in a conveyance directly *inter partes*.

But, aside from this, I think the plaintiff showed affirmatively that he did pay a valuable consideration. It is well settled that, in order to constitute a *bona fide* purchase for a valuable consideration, within the meaning of the recording act, the purchaser must, before being notified of the prior equity of the holder of an unrecorded deed, have advanced some new consideration, or relinquished some security for a preexisting debt due to him. The mere

receiving a conveyance in payment of a preëxisting debt is not enough. (*Dickerson* v. *Tillinghast,* 4 *Paige,* 215; 4 *Kent,* 168.)

In this case no security for an existing debt was relin quished. The plaintiff obtained his deed under the statutory proceeding against Smith, an absent debtor. I do not perceive how the case is distinguishable from that of a conveyance obtained by virtue of a statutory sale by a sheriff, on execution. The validity of a sheriff's deed, against a prior unrecorded conveyance by the judgment debtor, has been repeatedly recognized, and, I think, properly, (*Parks* v. *Jackson,* 11 *Wend.,* 442 ; *Tuttle* v. *Jackson,* 6 *id.,* 213.) The two methods of sale and conveyance are analogous; both are judicial or statutory proceedings.

It is true, the plaintiff, who was the creditor of Smith, or one of the creditors, paid no new consideration at the sale, except the expenses attending the proceedings. The real consideration was the debt; the costs were but an incident. Under the recording act it should be held that, in effect or equitably, the creditor purchasing upon a judicial sale, on his own judgment or in an insolvent proceeding to collect his debt, pays the amount of his bid to the officer, and in theory receives it back again. In other words, it should be held in equity that the land is converted into money, and the conveyance made in consideration of the money thus advanced.

None of the objections made at the trial, as to the validity of the attachment proceedings, are well taken. The statute which requires the officer, before whom the proceedings against an absent debtor are pending, to report to the supreme court within twenty days after the appointment of trustees, and to file the same, is merely directory. The report, when made, is rendered by statute conclusive evidence of all the facts which it contains. (2 *R. S.,* 13, § 68.) Its recitals therefore proved all the proceedings, including the issuing of the original attachment, and all formal matters

of regularity up to the appointment of trustees. There was no claim that the report of the judge was defective in any respect, at least no objection was made that its recitals were not full and complete.

The requirement of the statute, that the trustees shall cause their appointment to be recorded within one month, is simply directory. (2 *R. S.*, 12, § 61.) An entire failure to record would not affect the validity of the sale made by them of the debtor's property.

The judgment of the supreme court must be affirmed.

All the judges, except MITCHELL, J., who did not hear the argument, and took no part in the decision, were in favor of affirmance.

Judgment accordingly.