David S. Page, Respondent, v. William E. Waring, Appellant.

Where, in a controversy as to title to lands, both parties claim from a common source, the one claiming under a deed to A., first executed but not recorded until after the record of a deed to B., under which the other party claims, the fact that a conveyance from A. was recorded before the deed to B. is immaterial; if the deed to B. has the priority over A.'s deed by reason of its earlier record, no title valid as against it could be derived from A.

So, also, it is immaterial that the deed to A. was recorded prior to a conveyance from B, or from his grantee, as, if B. had good title under the recording act, those taking title under him are also protected.

The possession which will constitute constructive notice of an unrecorded deed to a subsequent purchaser must be under the deed, and actual, open and visible, so that the subsequent purchaser could have gone upon the land and obtained by inquiry information of such deed.

While every person is chargeable with notice of bankruptcy proceedings legally and properly conducted, such notice is only for the protection and efficacy of the proceedings. A party to a controversy, who does not claim under, and bases no right upon, said proceedings, cannot claim that the opposite party is charged thereby with any notice whatsoever.

Such proceedings are in no case constructive notice of facts not needful or proper to be stated or to appear therein.

It is not necessary for the bankrupt to make any statement in his schedules or otherwise as to property formerly owned by him, but which he did not then own, and in which he had for a long time ceased to have any interest.

There can therefore be no constructive notice of statements in the bankrupt's schedules as to such property.

The constructive notice which every one has, at common law, of proceedings in courts of record is only of pending proceedings; after judgment fixing the rights of the parties, no such notice is implied.

In an action wherein the rights of the parties depended upon adverse claims as to title to certain premises, plaintiff claimed under a deed from P. to H., executed in 1827, but not recorded until 1864. Defendant claimed under a deed from P. to G., who was a purchaser in good faith and for a valuable consideration, executed and recorded in 1861, and under a deed of an assignee in bankruptcy, executed and recorded in 1863. P. was decreed a bankrupt in 1842; in his schedule of property it was stated, in substance, that certain lands, including the lands in question, formerly belonged to petitioner, and were sold under foreclosures of mortgages, etc., or passed to a receiver appointed in a creditor's suit. There was no notice or statement in any way, in the proceedings, of the deed from P. to H., or of any claim of the latter, or any one claiming under him, to the lands. No debts were proved against P., and he was discharged from his debts by decree entered in 1842. *Held*, that there was nothing in the bankruptcy proceedings giving actual or constructive notice to defendant or those under whom he claimed of the deed to H., or that they could not, as against H. or those claiming under him, become purchasers in good faith; also, that, as the bankruptcy proceedings had been fully closed prior to the deed to G., no notice of them could be imputed to him.

Also, *held*, that, as no debts were proved, in the bankruptcy proceedings, consequently, no creditors were to be paid, any real estate which passed to the assignee reverted to and vested again in the bankrupt upon his discharge.

Also *held*, that the lands in question did not pass to the assignee of P., as his deed to H. was good as against the assignee.

Also *held*, that G., by his deed first recorded, got a good title as against P., H., the assignee, and all persons claiming under them; and that defendant, claiming under G., took his title and was equally protected.

(Argued February 20, 1879; decided March 18, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Henry H. Anderson*, for appellant. Upon the facts found by the referee, when the awards were made, Morton was, as regards the premises taken, a purchaser in good faith within the meaning of the recording act. (*Varick* v. *Briggs*, 6 Paige, 323; 22 Wend., 543; *Webster* v. *Van Steenburgh*, 46 Barb., 211; *Hetzel* v. *Barbee*, 69 N. Y., 1.) The burden of showing a consideration, actual notice, notice by record and notice by possession, was upon plaintiff. (*Reed* v. *Gannon*, 50 N. Y., 345; *Ring* v. *Steele*, 4 Abb. Ct. App. Dec., 68; *Brown* v. *Volkenning*, 64 N. Y., 76; *Webster* v. *Van Steenburg*, 46 Barb., 211; *Trustees* v. *Wheeler*, 5 Lans., 160; *Holmes* v. *Stout*, 2 Stock. [N. J.], 419; *Wood* v. *Chapin*, 13 N. Y., 509.) Whatever title, if any, remained in the assignee under the bankrupt act was in good faith acquired by Morton. (*Charman* v. *Charman*, 14 Ves., 586; *Re Hoyt*, 3 B. R., 55; Perry on Trusts, §§ 351, 352, 353, 920; 1 Edm. R. S., 680, § 67; Bankrupt Act of August, 1841, § 3.) On the strength of his purchase in good faith, the record title became established in Morton under the recording act of 1813. (Act of April 9, 1813; 2 R. S., 1813, p. 406, § 171; *Jackson* v. *Given*, 8 J. R., 137; *Varick* v. *Briggs*, 6 Paige, 323; 22 Wend., 543; *Hooker* v. *Pierce*, 2 Hill, 650; *Wood* v. *Chapin*, 13 N. Y., 509; *Cook* v. *Travis*, 20 id., 401; *Webster* v. *Van Steenburgh*, 46 Barb., 211.) There was nothing in the bankruptcy proceedings which amounts to notice to affect Morton's position as a purchaser in good faith. (*Cambridge Val. Bk.* v. *Delano*, 48 N. Y., 326; *Dexter* v. *Harris*, 3 Mas. C. C. R., 536; *Ware* v. *Egmont*, 4 De Gex., M. & G., 473; *Acer* v. *Westcott*, 46 N. Y., 384; *Wilson* v. *Wall*, 6 Wall., 83; *Williamson* v. *Brown*, 15 N. Y., 363; *Reed* v. *Gannon*, 50 id., 349;

*Whitebread* v. *Boulnoir*, 1 You. & Coll Ex., 303; *Birdsall* v. *Russell*, 29 N. Y., 220; *Pentland* v. *Keep*, 41 Wis., 490.)

*N. A. Chedsey*, for respondent. The recording of the deed from Poillon and wife to Hart, being prior in time to the making and recording of the deed from Morton to Fox and from Fox to Waring, neither Fox nor Waring was a purchaser in good faith. (*Ring* v. *Steele*, 4 Abb. Ct. Apps. Dec., 68.) This constructive notice was as effectual as actual notice. (*Schutt* v. *Large*, 6 Barb., 373; *Jackson* v. *Post*, 15 Wend., 588; *Van Rensselaer* v. *Clark*, 17 id., 25.) The onus was upon Goldsmith and Marks, or any one relying on their title to show that value was actually paid. (*Jewett* v. *Palmer*, 7 J. Ch., 65; *Ring* v. *Steele*, 4 Abb. Ct. App. Dec., 68; 1 R. S. [5th ed.], 30, §§ 144, 164; *Carver* v. *Jackson*, 7 Pet., 83, 86; *Crane* v. *Lessee*, 6 Pet., 611; 2 Cow. H. & Edvo., notes 476, 574; *McGinty* v. *Reeves*, 10 Ala., 137; *Nolen* v. *Heirs of Gwyn*, 16 id., 725; 2 Wharton's Ev., § 1043, note 1; *Shotwell* v. *Harrison*, 22 Mich., 418; *Kelson* v. *Kelson*, 10 Hare Ch., 385; *Kipp* v. *Deniston*, 4 J. R., 26; *Shephard* v. *Little*, 14 id., 210; *Thallhimer* v. *Brinkerhoff*, 6 Cow., 102; 2 Phil. Ev., 62, note *b*; 7 J. Ch., 68; 1 Atk., 538; 2 id., 630; 3 id., 304; *Wright* v. *Decklyne*, Pet., 196; 1 Phil. Ev., 322; 2 id., 574, note 476; *Hardenburgh* v. *Larkin*, 47 N. Y., 109; 1 Wharton, § 1043, note 1; *Wood* v. *Chapin*, 13 N. Y., 509, 517; *Jackson* v. *McChesney*, 7 Cow., 360.) The filing of the petition in bankruptcy of Poillon, and the order adjudging him a bankrupt, was notice that he had no title, and was notice of plaintiff's title. (Bankrupt Act, 1841, § 3; *Mays* v. *Manu. Nat. Bk. Phil.*, 4 Nat. B. R., 447, 448, 660; *Re Lake*, 6 N. B. R., 542, 544; *Hitchcock* v. *Sedgwick*, 2 Vern., 156, 161; 14 Stat. at Large, 535; Rev. Stat., 992, § 4 ; *Turnbull* v. *Payson*, 16 Nat. B. R., 440.) The deed from Waddell to Marks, reciting the order in bankruptcy, was actual notice that Poillon had no interest when he conveyed to Goldsmith, and that Waddell, the assignee, had none when he conveyed to Marks. (*How.*

*Ins. Co.* v. *Halsey*, 4 Seld., 274; *Com. Valley Bk.* v.
*Delano*, 48 N. Y., 336.) The omission of a purchaser of
real estate to make proper inquiries is gross negligence, which
prevents him from being regarded as a *bona fide* purchaser.
(*Reed* v. *Gannon*, 50 N. Y., 345–350; *Williamson* v. *Brown*,
15 id., 358; *Hamlin* v. *Pettibone*, 10 N. B. R., 172, 177;
*Baker* v. *Bliss*, 39 N. Y., 70, 74, 75, 78, 79.) No posses-
sion, adverse to that acquired by Greenly in 1830, was shown.
(Code, § 81.) The sums awarded by the commissioners belong,
of right, to defendant. (Valentine's Laws, 1202–1203.)

EARL, J. On the 18th day of March, 1869, awards were
made to "unknown owners" for lands taken for the opening
of a street, in the city of New York. Those awards were
paid by the city to the defendant, who claimed to be enti-
tled thereto. The plaintiff, claiming that he owned the lands
at the time they were taken, and that he was therefore enti-
tled to the awards, brought this action against the defendant
to recover the money thus paid to him.

This controversy involves an inquiry into the title to the
lands for which the awards were made. It is conceded that
Peter Poillon owned the lands in 1827; and in June of that
year, he executed a warranty deed of them to one Hart.
That deed was acknowledged July 18, 1827, but it was not
recorded until August 15, 1864. On the 20th day of June,
1830, Hart executed a warranty deed of the lands to one
Greenly, which deed was acknowledged July twenty-first,
and recorded August 31, 1830. Greenly died in March,
1860, leaving a will, in which he empowered his executors
to sell his real estate; and on the 5th of March, 1863, they exe-
cuted a deed of these lands to the plaintiff, which deed was
recorded on the twelfth day of the same month. This is the
chain of plaintiff's title, upon which he bases his right to
recover in this action, and if there were nothing to break this
chain, his right would be plain enough.

The following is the chain of defendant's title: On the
29th day of January, 1861, Peter Poillon executed a deed

of these and other lands, without covenants, for a consideration, as recited in the deed, of $200 to one Goldsmith, which deed was acknowledged on the same day and recorded the next day. On the 22d day of July, 1862, Goldsmith executed a deed, without covenants, of an undivided half of these and other lands, for a consideration, as expressed in the deed, of $4,000 to one Marks, which deed was acknowledged July 29, 1862, and recorded September seventeen of the same year. Poillon was decreed a bankrupt April 6, 1842, under the general bankrupt law then in force, and an assignee of his estate was appointed. Such assignee, in pursuance of an order of the bankrupt court made January 13, 1863, executed a deed, dated the same day, of the same lands described in the prior deed, for the recited consideration of five dollars, to Marks, which deed was acknowledged January fifteen, and recorded February 2, 1863. On the 17th day of March, 1863, Goldsmith and Marks executed a warranty deed of the same lands to one Morton, for a consideration, recited and paid, of $9,000, which deed was acknowledged on the same day, and recorded on the 20th day of March thereafter. On the 19th day of March, 1869, the next day after the awards were made, Morton sold and assigned them to one Fox; and on the 20th day of April thereafter, Fox sold and assigned them to the defendant. It will be seen that the defendant has a regular chain of title from Poillon, and that all the deeds in his chain, down to and including the deed to Morton, were recorded before the deed from Poillon to Hart was recorded; and this priority upon the records presents the question to be considered, in determining the rights of these parties.

It matters not that the deed from Hart to Greenly was recorded before the deeds in the defendant's chain of title ; because, if the defendant, by reason of the record of the deeds under which he holds, has priority over the deed to Hart, and a title good as against that deed, then there is a break in plaintiff's chain of title, and no title could be derived from Hart that would be good as against the defendant.

(*Cook* v. *Travis*, 20 N. Y., 400.) And it matters not that all the deeds in the plaintiff's chain were recorded before the conveyance by Morton to Fox, and by Fox to the defendant; because, if Morton was protected by the recording act, and had good title under such act, then the persons taking title under him were also protected. (*Webster* v. *Van Steenburgh*, 46 Barb., 211; *Hooker* v. *Pierce*, 2 Hill, 650; *Wood* v. *Chapin*, 13 N. Y., 509.) Besides, the conveyance of the awards was not a conveyance of real estate; it was a mere conveyance of choses in action, and had nothing whatever to do with the recording act.

The act of 1813 (2 R. L. of 1813, p. 406, § 171), in reference to recording deeds of real estate in the city of New York, provides that "every such deed or conveyance, which shall hereafter be made or executed, in order to be good and effectual in the law, as against any subsequent purchaser or mortgagee *bona fide*, and for valuable consideration, and without notice of such prior deed or conveyance, shall be recorded at length in the office of the register in and for the city of New York, in the book now used or hereafter to be provided by him for that purpose." And in the Revised Statutes (1 R. S., 756) it is provided that "every such conveyance not so recorded, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate, or any portion thereof, whose conveyance shall be first duly recorded." Under these acts, the unrecorded deed, although prior in date, has no effect as to the subsequent deed first recorded, and the subsequent deed conveys the title as if the first deed had not been executed. (*Hetzel* v. *Barber*, 69 N. Y., 1.)

To give the subsequent deed such effect, it must have been taken in good faith and for a valuable consideration. Here, there can be no question that all the deeds in the defendant's chain of title were based upon a valuable consideration. A consideration was recited and acknowledged to have been received, in all the deeds, and that is sufficient *prima facie* evidence of a valuable consideration, under the recording act.

(*Jackson* v. *McChesney*, 7 Cow., 360; *Wood* v. *Chapin*, 13 N. Y., 509; *Ring* v. *Steele*, 4 Abb. Ct. App. Decs., 68.) Besides, there was other proof of the actual payment of the consideration mentioned in the deed to Morton.

The only remaining inquiry is whether the grantees in the deeds, under which the defendant holds, took their respective deeds in good faith. There is no evidence or claim of actual bad faith, or of actual notice of the unrecorded deed to Hart. The claim is that there was constructive notice of such deed. The plaintiff gave some evidence of some sort of possession of the lands, at and prior to the times the deeds were given, under which the defendant holds, and he claims that such possession was constructive notice. But the referee found against him, on this point. He found that the occupation was by mere squatters, who held possession on their own account ; and that at the time Morton obtained and recorded his deed, he had no notice of the plaintiff's title, derived from any occupation of them, or public claim of title to them by any of plaintiff's grantors. This finding is conclusive upon the plaintiff upon this appeal. Such possession, under an unrecorded deed, as will amount to notice to a subsequent purchaser, must be under the unrecorded deed, and must be actual, open, and visible, so that the subsequent grantee could go upon the lands, and obtain, by inquiry there information of the unrecorded deed. (*Brown* v. *Volkening*, 64 N. Y., 76.)

It is further claimed, that the grantees in the deeds, under which the defendant claims, got such constructive notice, that they could not be held to be *bona fide* purchasers, from the bankrupt proceedings against Poillon ; and this claim was sustained by the referee and by the General Term, and, by reason of such constructive notice, judgment was given for plaintiff.

These facts appear from the bankruptcy proceedings : On the 7th day of March, 1842, Poillon filed his petition in the United States District Court, applying for the benefit of the bankrupt act of 1841. Annexed to this petition was a

schedule containing an inventory of his property; and in such schedule it was stated that "all the lands in the twelfth ward of the city of New York, formerly belonging to petitioner, have been sold, under foreclosure of mortgages and decrees had for deficiencies;" and that "all remaining interest in said lands passed, as well as in all other property, to an assignee appointed under a creditor's bill, filed in the Court of Chancery of the State of New York, about July, 1840, by the Atlantic Bank, against the petitioner and Robert J. Cromerline, in which Daniel Trembly of the city of Brooklyn was appointed receiver, and to whom petitioner executed a general assignment, according to the practice of said court." The lands involved in this controversy were situated in the twelfth ward of the city of New York. Upon this petition, a decree of bankruptcy was entered against Poillon, and one Waddell became his assignee by operation of law. No debts were proved against Poillon; and on the 5th day of August, 1842, a decree was entered discharging him from his debts.

There was no notice or hint in any way, in any of the bankruptcy proceedings, of the deed from Poillon to Hart, or of Hart's claim to the land, or of the claims of any of the persons taking title under Hart, and there is nothing in those proceedings to put any one upon inquiry for Hart's deed; and hence, they did not give such actual or constructive notice to those under whom defendant claims that they could not become purchasers in good faith of these lands as against Hart and those claiming under him. To defeat defendant's title under the deeds first recorded, there must have been actual or constructive notice of the prior unrecorded deed. As said by Judge WRIGHT, in *Birdsall* v. *Russell*, 29 N. Y., 220: "The rights of a purchaser are not to be affected by constructive notice, unless it clearly appear that the inquiry suggested by the facts disclosed at the time of the purchase would, if fairly pursued, result in the discovery of the defect existing but hidden at the time. There must appear to be, in the nature of the case, such a connection between the facts

discovered and the further facts to be discovered, that the former may be said to furnish a clue — a reasonable and natural clue — to the latter."

It is true, as claimed by the plaintiff, that every person is chargeable with notice of bankruptcy proceedings legally and properly conducted. But it is not a notice for every conceivable purpose. It is a notice only for the protection and efficacy of such proceedings. After bankruptcy proceedings are instituted, every person is so far affected with notice, that he cannot deal with the bankrupt or his estate to the prejudice or embarrassment of such proceedings, while they are pending, and it goes no further. So, at common law, all persons were chargeable with notice of the pendency of an action in the courts of record, not for every purpose, but simply so far that they could not deal with the parties or the subject matter in litigation so as to embarrass the action, or defeat the judgment to be rendered therein. So the plaintiff, who does not claim under the bankruptcy proceedings, and bases no right upon them, cannot claim that the defendant, or those under whom he claims, were charged by them with any notice whatever.

But suppose it can be claimed, in this case, that the defendant, and those under whom he holds subsequent to Poillon, were chargeable with some kind of notice by the bankruptcy proceedings, what was the notice? Certainly not of everything that was said and done in such proceedings — not of everything witnesses might swear to, or the bankrupt might choose to state in any of the proceedings. The most that could be claimed, is that there was constructive notice of the essential steps, and of the necessary facts, and of the final adjudication. They would not be such notice of any facts not needful or proper to be stated. It was required that the bankrupt should give a schedule of the property he owned, but it was not necessary for him to make any statement in such schedule, or in any other paper, in reference to property which he did not own, and in which he had for some considerable time ceased to have any inter-

est ; and hence, there was no constructive notice of the statements in the schedule annexed to Poillon's petition that he had been deprived of his property in the twelfth ward by mortgage foreclosures and creditors' bill. Such statements were unnecessary and not required to be made, and served no legitimate purpose in the proceedings. But even if any one was chargeable with notice of those statements, it was simply notice that Poillon at that time made such statements, not that such statements were true ; and there is no proof, in this case, that they were true. There are no facts showing that if Morton, or any other grantee under Poillon, had read those statements, he could have learned anything more by any inquiry which he could have made. To have made those statements of any account whatever, there should have been proof that the title to the lands in the twelfth ward passed out of Poillon in the manner stated.

Suppose it be true, that everybody was chargeable with notice that in 1842 Poillon's title to all the real estate he then owned became vested in his assignee in bankruptcy, I am unable to perceive how that helps the plaintiff's case. Whatever passed to and remained in such assignee became vested in those under whom defendant holds, by a deed from the assignee, recorded before the deed to Hart was recorded; and thus the title of such assignee, if any, became extinguished. But the assignee probably had no title when he executed the deed. Poillon's estate became vested in him by operation of law, without any conveyance, as trustee for Poillon's creditors, and after the payment of the debts, as trustee for Poillon himself, as to any balance. Here, no debts were proven, and hence, there were no creditors to be paid ; and therefore any real estate which passed to the assignee would thereafter revert and vest again, by operation of law, in Poillon, the whole purpose of the assignment having been fully accomplished : (*Charman* v. *Charman*, 14 Ves., 580; *In re Hoyt*, 3 Bank R., 55; 1 Edm. R. S., 680, § 67 ; Perry on Trusts, §§ 351, 352, 353, 920.)

But there is another and, if possible, a more complete

answer to this claim of constructive notice. The constructive notice which every one has at common law of proceedings in courts of record is a notice only of pending proceedings. It is only a notice while there is a *lis pendens:* (*Leitch* v. *Wells*, 48 N. Y., 585, and cases there cited.) Such notice is implied or imputed, that the ends of justice may not be defeated by transactions subsequent to the commencement of suit and before final judgment. After judgment and the rights of the parties have become fixed thereby, there is no longer necessity to imply such notice. The judgment may transfer property and determine rights, so that all persons thereafter dealing with the parties to the judgment, or dealing with the subject matter thereof, may be affected thereby ; but it is not because of any notice imputed to them, but because of the state of things established by the judgment. It is not true, that all persons are forever charged with notice of all the records and public proceedings of courts. So of bankruptcy proceedings conducted in courts of record. While they are pending, all persons are so far chargeable with notice of them that they cannot embarrass or defeat them, or thwart the purpose of the bankrupt act, by dealing with the bankrupt or his estate. But this notice, and the purpose of it, cease when the proceedings are concluded and the litigation has ended, and the rights of all the parties thereto have become finally fixed and determined. At the time Poillon deeded these lands to Goldsmith, those proceedings had been finally closed, and a final decree discharging Poillon from his debts had been entered for nineteen years. At that time, the bankrupt proceedings were in no sense pending, and hence, no notice of them could be imputed to Goldsmith. If Goldsmith had attempted to purchase of Poillon any property which had passed out of him by the bankruptcy proceedings, he would have failed to get any title ; not because of any notice imputed to him, but because Poillon had no title to convey. But here, Goldsmith did not purchase or attempt to purchase any land affected by the bankruptcy proceedings. These lands did not pass to Poil-

lon's assignee, because his deed to Hart was good as against such assignee. That deed was invalid only as against a subsequent purchaser in good faith and for value : (*Hetzel* v. *Barber*, *supra*.) Hence Goldsmith, by his deed first recorded, got a good title as against Poillon, Hart, and the assignee, and all persons who could claim under them ; and the persons claiming under him took his title, and are equally protected.

For all these reasons, it is clear that there was nothing in the bankruptcy proceedings in any way affecting or impairing defendant's title ; and the judgment of the General Term must be reversed and a new trial granted, with costs to abide event.

All concur.

Judgment reversed.