Robert Doscher, J.
By chapter 785 of the Laws of 1944, provision was made for the future construction, improvement and maintenance of the New England Thruway. The statute, inter alia (§4), authorised the County of Westchester to convey to the State such parts of the lands and improvements acquired by the county for the Pelham-Port Chester Parkway as were necessary for the New England Thruway. The fee title to such parts of the Pelham-Port Chester Parkway was to vest in the State “ as of the date of such conveyance ’ ’. The State was to thereupon take possession of such real estate and hold it in perpetuity (emphasis supplied).
This action, brought pursuant to article 15 of the Real Property Law, seeks to determine claims to a small parcel (50 x 80) of the land over which a viaduct of the New England Thruway has been constructed.
Most of the historical facts surrounding this controversy are not in dispute. Approximately 25 years ago, Westchester County acquired a right of way for the construction of the Pelham-Port Chester Parkway. As this right of way passed through New Rochelle, it was 100 feet wide. Due to the- economic conditions of the 1930’s, the parkway was not then, nor has it ever been, constructed.
*711 About 15 years ago, the owner of a factory in New Rochelle, adjacent to the right of way, so enlarged his building as to encroach on the right of way. While this encroachment existed, plaintiff’s predecessor in title, Empire Coil Co., Inc., purchased the factory.
On or about August 4, 1950, while the encroachment existed, the county, for a valuable consideration, granted to Empire a revocable license to continue to maintain the building on the county’s property. In the meantime, however, the county had been urging the State, without success, to construct the Thruway. The lack of success continued and on February 11, 1952, the Board of Supervisors of the county adopted a resolution authorizing its County Executive to execute “ a deed of conveyance ’ ’ for the parkway lands to the State. In accordance with that resolution, the county and the State entered into an agreement dated March 10,1952, which contained the same provisions as section 4 of chapter 785 of the Laws of 1944. It is interesting to note that throughout this agreement the conveyance of the property for the Thruway was to be made in the future. By no language does the county convey the property in the agreement.
The State did not take possession of the property prior to January 19, 1954, and the resolutions and agreement above mentioned were not recorded prior to that date. On said date, for a valuable consideration, the county in due form of law conveyed the property in question to Empire. The deed recited the fact that the New England Thruway was to be constructed on, or over, the property and the grantee covenanted, when required, to grant to the State “ a permanent aerial easement together with a permanent easement to construct piers or necessary columns for supporting the over head structure ” (emphasis supplied). At the time of the delivery of the deed, no construction work was being done on the New England Thruway and none of the papers, such as the resolutions or agreement, had been recorded. It is conceded, however, that in 1950 Empire unsuccessfully attempted to obtain a commitment from the State that when the Thruway would be constructed, the building would be permitted to remain.
On or about June 14, 1955, without obtaining any document other than the afore-mentioned agreement of March 10, 1952, the State entered upon the premises in question and demolished the building. Thereafter, on December 21, 1955, Empire, by an instrument in writing, quitclaimed the premises in question to plaintiff.
*712 At the time plaintiff took title from Empire, he had acquired knowledge of the State’s position, the demolition of the building and the agreement of March 10, 1952, between the county and the State. Nevertheless, if Empire, his grantor, had acquired a good title, plaintiff’s title would also be good, in spite of his knowledge (Wood v. Chapin, 13 N. Y. 509, 518; O’Neill v. Lola Realty Corp., 264 App. Div. 60, 64; Olsen v. Kleinhenz, 86 N. Y. S. 2d 178, 180). The entire case revolves around the question of whether Empire was a bona fide purchaser.
Some time prior to December 18, 1952, Empire, through its attorneys, made an offer to purchase the property in question. It was advised, by the county on that date, that the matter was “being taken up with the Thruway Authority” and that a further communication would be sent after the county had heard “ from these authorities ”. About a month later, Empire was further advised that the property would be released with the stipulation that an aerial easement with the right to construct piers or columns would be granted the State. It was in this form that the sale to it was made and the deed executed.
It is a very difficult question to determine when a purchaser is put on such notice as will require further inquiry. In the case at bar, the record was clear of any instruments affecting the county’s title and advice had been received from the county of its inquiry of the State and willingness to sell thereafter. Have we reached the stage where a citizen, in the exercise of ordinary prudence cannot rely on his government? Have we come to the pass where officials are to be distrusted by the ordinary prudent citizen? I think not. In the face of the information received, to demand further inquiry (from the State itself) would require the use of utmost circumspection, something the law does not require. Parenthetically, the State could have avoided this controversy by making its contract of March 10, 1952, a matter of record.
Judgment will be granted to plaintiff determining that he held a good and sufficient title to the premises in question, subject to the covenant to grant to the State an aerial easement, together with an easement to construct piers or necessary columns for supporting the overhead structure of the New England Thruway. Counterclaim dismissed.
The foregoing shall constitute the decision of the court.
Submit judgment on notice.