Albert Conway, J.
This action was commenced on November 9,1964 by the service of a summons and complaint and an order to show cause returnable November 10. On that day Justice *209 Hallinan heard the motion for a preliminary injunction and on November 18 the motion was denied. However, Justice Hallotan granted leave to place the action on the Trial Calendar for a day certain upon five days’ notice immediately after the joinder of issue. On November 20 Mr. Justice Kx-EmPELD granted a stay returnable before the Appellate Division on November 23, 1964. The Appellate Division “ Ordered that the said motion be and the same hereby is granted on condition that the parties proceed to trial on November 24, 1964 before the Justice presiding at Special Term, Part III, Supreme Court, Kings County.” The trial was commenced before this court on November 24, 1964.
The action is for a permanent injunction to enjoin and restrain the defendant from violating its contracts dated October 23, 1962; from notifying defendant’s subscribers and the general public that plaintiffs have no contract with the defendant; from notifying its subscribers and others, of the defendant’s refusal to honor the agreements with the subscribers in the Howard Park General Hospital; and for a money judgment.
On July 28, 1960 the Americana First Corporation, as principal, and Howard Park Corporation, as builder, entered into an agreement to build the Howard Park General Hospital. The terms of the agreement were that the hospital was to be built by the Howard Park Corporation but the Americana First Corporation was to pay the building costs plus 10% builder’s fee. The said agreement (Defendant’s Exhibit CC) also provided that the Americana First Corporation (a Delaware corporation) was to obtain an assignment of the lease between Howard Park Corporation as landlord and Howard Park General, Inc., as tenant, affecting the land upon which the hospital was to be built. After the hospital was completed, the plaintiff Howard Park Corporation billed the plaintiff First Americana Corporation (a New York corporation and not the Delaware corporation mentioned in Defendant’s Exhibit CC) the builder’s fee of 10% according to the above-mentioned agreement (Defendant’s Exhibit CC) and the First Americana Corporation paid to the Howard Park Corporation “ around $350,000-some-odd.” No lease made by Howard Park Corporation, as landlord, was produced although called for by the defendant. However, an examination of plaintiff’s Exhibit 12 sheds some light upon the transaction discussed above. Plaintiff’s Exhibit 12 is a sublease between First Americana Corporation, as landlord, and Howard Park General Hospital Associates, a partnership, as tenants. It is stated, in said sublease, that on May 1, 1959 a lease was entered into between Howard Park Corporation, as landlord, and Howard Park Gen *210 eral, Inc., as tenant. On February 2, 1961 that lease was assigned by Howard Park General, Inc., to First Americana Corporation.
The lease, presently held by First Americana Corporation, by assignment, as tenant, is a 21-year lease commencing May 1, 1959 for an annual rental of $18,000 until a certificate of occupancy is issued on the hospital and then the annual rental was to be $54,000. The tenant has the option to renew for two additional 21-year periods at an annual rental of $54,000 or 12% of the appraised value of the land, whichever is greater. The lease is a net lease to the owner and the tenant is to pay for all repairs, maintenance, taxes and other expenses of the property.
Herbert T. Brown is president, director and chairman of the board of the two plaintiff corporations, Howard Park Corporation and First Americana Corporation. His wife and son serve in other offices and as directors. Herbert T. Brown owns all the stock in Howard Park Corporation and 95% of the stock of the First Americana Corporation, either personally or in the name of other corporations owned by him.
Three physicians (Dr. Oscar IT. Bloom, a plaintiff, and Dr. Joseph Dolgow and Dr. John J. Ingrassia) became a partnership under the name of Howard Park General Hospital Associates and on December 5, 1961 they entered into a sublease with the First Americana Corporation at an annual rental of $655,000 together with a payment of $500,000 in return “ for the execution of the lease to the doctors.” The $500,000 was to be paid in five equal annual installments. The partnership requested a contract from the defendant. The defendant was unwilling to grant a participating membership to the Howard Park General Hospital while such a lease was in existence. A new lease dated May 10, 1962 was entered into for an annual rental of $455,000 plus the payment of $500,000 in return “ for the execution of the lease to the doctors.” A contract dated October 23, 1962 between Oscar Bloom, M.D., Joseph Dolgow, M.D. and John J. Ingrassia, M.D., licensees of Howard Park General Hospital, Howard Park Corporation, First Americana Corporation and Associated Hospital Service of New York, signed by the Associated Hospital Service of New York by John L. Shurtleff on October 25, 1962, appears not to have been signed by the three physicians making up the aforesaid partnership nor by Herbert T. Brown for the Howard Park Corporation and the First Americana Corporation until January 17, 1963.
On June 25, 1964, an agreement was entered into between the three physicians making up the partnership Howard Park General Hospital Associates wherein they agreed to dissolve and *211 terminate their partnership as of June 19, 1964 and the plaintiff Oscar H. Bloom agreed to assume all the assets and liabilities of the said partnership. Dr. Oscar H. Bloom continued the operation of the hospital.
On June 26, 1964 it appears that the secretary and counsel of the defendant requested an application for a new participating agreement to be entered into between only Oscar H. Bloom, M.D., as licensee and the defendant, since the dissolution and termination of the partnership effective June 19, 1964 destroyed the sole entity licensed to operate this hospital.
On October 15,1964 plaintiff Oscar H. Bloom submitted a form of application by the Howard Park General Hospital ‘ ‘ for participating hospital membership in Associated Hospital Service of New York”. On October 30,1964 the Associated Hospital Service of New York notified each of the plaintiffs and their counsel that the application for participating status was rejected and the ‘1 temporary arrangement under which benefits have been extended to subscribers pending a decision on the application ” would terminate as of midnight November 10, 1964.
Thereafter, on the 23rd day of November, 1964, the Appellate Division, Second Department, granted a stay, as I pointed out hereinabove, on condition that the parties proceed to trial on November 24,1964 before the Justice presiding at Special Term, Part III, Supreme Court, Kings County. The trial herein was commenced on November 24,1964 and continued until December 18,1964 in Special Term, Part III.
After trial and upon all the proof I find that neither the original partnership nor the plaintiff Oscar H. Bloom, M.D., was ever in truth and in fact the true operators or operator of the hospital but that Herbert T. Brown was in truth and in fact the real operator of the hospital, all in violation of subdivision 1 of section 35-b of the Social Welfare Law: “ Only physicians duly licensed by the state department of education and partnerships of such physicians may operate hospitals for profit ”.
I further find that the participating agreement dated October 23, 1962 came to an end on June 19, 1964, the date that the partnership terminated and the date that the license issued by the New York City Department of Hospitals to the three physicians ended. The New York City Hospital Code (part II, Proprietary Hospitals, § 11.02, subd. [e]) provides: “ (e) A license to operate a hospital shall be issued by the Commissioner to a particular individual or individuals and for the designated place of business mentioned in the license. The license shall not be valid for use by any other person or persons, or at any place *212 other than that designated in the license. Any transfer as to person or place shall cause an immediate forfeiture of such license.”
This dissolution terminated the status of the hospital as a participating member of the Associated Hospital Service of New York.
I further find that the financial condition of the hospital and of its lessor First Americana Corporation is such that one cannot be assured of the continued operation of the hospital. The financial statement prepared by the hospital’s accountant showed a capital deficit of over $700,000 as of December 31, 1963. The financial statement prepared by independent accountants showed a deficit of over $1,193,000 as of July 31, 1964.
There are judgments against the three doctors, which were assumed by Oscar H. Bloom, M.D., and against First Americana Corporation, which remain unpaid and it was admitted on the trial that the first mortgage in the face, amount of $3,300,000 held by trustees of the Central States, Southeast and Southwest Areas Pension Fund and made by Howard Park Corporation is presently about $40,000 in default. In addition, the First Americana Corporation issued debentures in the amount of $2,000,000 maturing in 10 years at 10% interest payable quarterly. Since October 1, 1964 no interest was paid to the debenture holders and several have commenced action against the corporation.
Upon all of the foregoing the complaint is dismissed, with costs.