**AMERICAN STERILIZER COMPANY,**
**Plaintiff,**

v.

**Herbert T. BROWN, Defendant.**

**Al KEVELSON, Appellant,**

v.

**AMERICAN STERILIZER COMPANY,**
**Appellee.**

**No. 369, Docket 31104.**

United States Court of Appeals
Second Circuit.

Argued Feb. 8, 1967.

Decided May 1, 1967.

Julius Miller, New York City (Gleason & Miller, New York City, on the brief), for appellant.

Lawrence C. Gutman, New York City (Raines & Gutman, New York City, on the brief), for appellee.

Before MOORE, FRIENDLY and SMITH, Circuit Judges.

MOORE, Circuit Judge.

This appeal involves a dispute between appellee American Sterilizer Company (American) and appellant Al Kevelson concerning their respective rights in certain hospital equipment sold by American to one Herbert T. Brown under a conditional sales contract. For reasons hereafter stated, we affirm the district court's finding that Kevelson has no interest in said equipment or the proceeds from the sale of said equipment.

On January 5, 1961, Herbert T. Brown, purportedly acting for the "Howard Park General Hospital," signed an agreement with American whereby American was to provide some $62,000 worth of its own hospital equipment and was to procure up to $40,000 worth of equipment for Brown from other suppliers. On August 15, 1961, a conditional sales contract for $103,859.99, covering the cost of the equipment, was entered into by American, as seller, and, as in the prior agreement, by "Howard Park General Hospital, By H. T. Brown, Pres.," as buyer. $12,059.99 was paid as a down payment with the balance due in 60 monthly installments of $1,530.00 each. Pursuant to the New York Uniform Conditional Sales Law, New York Personal Property Law, McKinney's Consol.Laws, c. 41, §§ 60–81–b,[1] American filed the conditional sales contract in the Queens County Register's Office under the name "Howard Park General Hospital." Unbeknownst to American, however, there was no such entity as the "Howard Park General Hospital," it being neither a corporation, partnership nor a registered trade name. The name was apparently used by Brown while he operated the hospital. For a discussion of the factual and legal complexities involved in the short term operation of the hospital known as the "Howard Park General Hospital," see Bloom v. Associated Hospital Service, 45 Misc.2d 208, 256 N.Y.S. 2d 483 (Sup.Ct.1965).

Although the hospital was operated by Brown personally, the hospital realty was owned by the Howard Park Corporation, a corporation owned by Brown with Brown acting as both president and chairman of the board of directors. In January and March of 1963, the trustees of the Central States, Southeast and Southwest Areas Pension Fund (Trustees), a Teamsters pension fund, made a mortgage loan to the Howard Park Corporation in the aggregate sum of $3,300,000. The loan was secured by a

1. Repealed by N. Y. Uniform Commercial Code § 10–102 (eff. Sept. 27, 1964). The new filing provisions of the UCC do not apply to this case.

mortgage on the real property and by a chattel mortgage on

> "all fixtures, chattels and articles of personal property now or hereafter attached to or used in connection with the operation of a general hospital in the said building."

As the Trustees had insisted that, as a condition of closing the chattel mortgage, all personal property used in connection with the hospital premises should be clear of all encumbrances, the Trustees engaged a title company to search the records for any encumbrances. The search did not disclose the American conditional sales contract and it is uncontested that, at the time of accepting the chattel mortgage on March 18, 1963, the Trustees had no actual knowledge of the existence of the conditional sales contract. Both the January real property mortgage and the March chattel mortgage were signed: "Howard Park Corporation, By: Herbert T. Brown."

The hospital did not prosper, as it apparently was not being operated in accordance with State law, see *Bloom*, supra, and both Brown and his corporation became financially embarrassed. In 1965, the Trustees instituted a foreclosure action on the mortgages, then in default, and a second record search—this time to ascertain the required parties to be named in the foreclosure suit—did not disclose the American conditional sales contract.

In January 1966, American filed the instant suit in the district court against Herbert T. Brown personally for breach of the conditional sales contract, alleging that "Howard Park General Hospital" was not a corporation but an unregistered trade name used by Brown. Brown failed to answer the complaint and a default judgment in the amount of $40,-584.64 was entered against him on April 8, 1966 for the balance due on the purchase price of the hospital equipment. American, after entry of judgment, duly delivered a property execution to the United States Marshal for the Eastern District of New York who entered the hospital premises and levied upon the equipment covered by the conditional sales contract by attaching bright colored tags on each and every item so covered. Subsequent to this physical levy, the foreclosure action instituted by the Trustees was completed, and one David Fischoff was the successful bidder at the resulting foreclosure sale held on August 5, 1966, which was made subject to "any state of facts an accurate survey or a physical inspection would disclose." Fischoff immediately assigned his interest to Al Kevelson, the appellant herein, a man thoroughly familiar with the commercial matters involving the Howard Park General Hospital. There is no question but that, prior to the foreclosure sale, both Fischoff and Kevelson had full knowledge of the Marshal's levy made on the equipment covered by American's conditional sales contract.

In order to litigate the question of what interest, if any, he has in the hospital equipment, Kevelson intervened in American's suit against Brown and moved to permanently stay the United States Marshal's sale of the tagged equipment, alleging that the equipment had been covered by the chattel mortgage to the Trustees and that, therefore, he had acquired title to the equipment through the foreclosure sale. On December 12, 1966, the district court denied the motion ruling that, although American was not entitled to the protection of the recording act, New York Personal Property Law § 65, as it had not properly filed the conditional sales contract, American must still prevail as against Kevelson as (1) Kevelson had full knowledge of the facts at the time he acquired an interest in the hospital property, and (2) the equipment had been sold to Brown personally and was thus not covered by the mortgage conveyed by the Howard Park Corporation to the Trustees as the Corporation never had title to the equipment. Kevelson duly appealed to this Court from the district court's determination.

On March 15, 1967, subsequent to the oral argument of this appeal, the Marshal's sale took place and the equipment was sold; therefore, Kevelson's request

for a permanent stay is now moot. However, the underlying issue concerning the respective rights of American and Kevelson in the tagged equipment—or proceeds from the sale of the equipment—is by no means moot. We thus turn to the merits of the controversy.

In order for Kevelson to establish any right in the hospital equipment, he must demonstrate (1) that American failed to properly file the conditional sales contract, and (2) that the Howard Park Corporation had title to the equipment on March 18, 1963 when it executed the chattel morgage to the Trustees. We agree with the district court that the Howard Park Corporation never had title to the equipment.

■ Kevelson makes an initial argument that the various items of equipment covered by the conditional sales contract were fixtures rather than personalty and thus a part of the hospital realty. Kevelson thus seeks to invoke § 67 of the New York Personal Property Law which places additional burdens on conditional vendors attempting to reserve an interest in property that is affixed to realty. We are spared the necessity of analyzing the effect of § 67 as we believe that a glance at the list of equipment covered by American's contract discloses that the equipment is clearly personality [2] and, thus, § 67 is inapplicable. Moreover, the conditional sales contract itself—which must be taken as embodying the intent of the parties—contained the following clause: "Said equipment shall: remain personal property; not become part of the freehold."

■ Section 64–a of the New York Personal Property Law requires that, to enjoy the protection of the recording act, a conditional sales contract must contain: "The name of the * * * buyer." The conditional sales contract in this case named the "Howard Park General Hospital" as buyer, whereas in fact there was no such entity, the real buyer being Herbert T. Brown individually. The New York statutes relating to conditional sales contracts were enacted "for the benefit of creditors and bona fide purchasers and are construed strictly against the parties to the contract and with liberality as to those for whose protection the statutes were enacted." In re Amity Dyeing & Finishing Co., 200 F. Supp. 823, 826 (S.D.N.Y.), aff'd on other grounds, 304 F.2d 831 (2d Cir. 1962). The New York law is clear that it is incumbent upon the conditional vendor to ascertain and verify the name of the buyer. Industrial Bank of Commerce v. Packard Yonkers Corp., 279 App.Div. 125, 108 N.Y.S.2d 249 (1st Dep't 1951), aff'd, 304 N.Y. 622, 107 N.E.2d 96 (1952). We therefore conclude that American, in filing the contract against a non-entity, did not properly comply with the New York recording statutes. The Trustees could not be charged with record notice of the conditional sales agreement.[3]

■ American argues that, apart from the fact that the Trustees did not have notice of the conditional sales contract when they accepted the chattel mortage, Fischoff and Kevelson did have notice of the sales agreement at the time of the foreclosure sale and therefore purchased the property subject to American's rights. The district court accepted this contention. The argument, however, overlooks the basic purpose of the recording act which is to protect the bo-

---

**2.** The list includes a wide variety of standard hospital equipment from bedpan racks and stainless steel tables to operating tables and sterilizing equipment.

**3.** It might be pointed out that if American properly had named Brown as the buyer and filed the conditional sales contract against the name of Brown in the Queens County Register's Office, the Trustees would probably not be chargeable with record notices as they were dealing with the Howard Park Corporation rather than with Brown individually. But, of course, if the Howard Park Corporation never had title to the equipment—a point discussed infra—notice to the Trustees is immaterial as the Corporation could not convey an interest in the equipment to the Trustees.

na fide purchaser or mortgagee for value without notice—in this case the Trustees. For example, assuming for the moment that the March 1963 chattel mortgage did cover the equipment, the Trustees would have illusory protection if they could not be sure that good title to the equipment could be conveyed at a foreclosure sale where all potential buyers would have notice of American's claims. Cf. Wood v. Chapin, 13 N.Y. 509, 518 (1856); Rosenberg v. People, 12 Misc.2d 710, 172 N.Y.S.2d 845, 847 (Sup.Ct.1958); Olsen v. Kleinhenz, Sup., 86 N.Y.S.2d 178, 180 (Sup.Ct.1948). Contrary to the district court's ruling, therefore, we hold that Kevelson's knowledge of American's claim at the time Kevelson acquired the hospital property is immaterial.

■ The crux of this case centers around the fact that the Howard Park Corporation never obtained title to the equipment covered by American's conditional sales contract and thus was incapable of conveying any interest in the equipment to the Trustees. The Howard Park Corporation owned the realty, but did not operate the hospital. As a State court has found, see *Bloom,* supra, Brown operated the hospital individually. American sold the equipment to Brown and not to the Corporation.

Kevelson argues that the fact of Brown's signature on the conditional sales contract as well as on the chattel morgage shows either (1) that Brown really signed the conditional sales contract as president of the Corporation so that the Corporation did acquire title to the equipment, or (2) that, although Brown bought the equipment individually, his execution of the chattel mortgage for the Corporation doubled as a transfer of the equipment from himself to the Corporation and a mortgaging of the equipment by the Corporation to the Trustees. The district court rejected these arguments, finding, as to the second contention, "no indication of an agreement between Brown and the Howard Park Corporation concerning the transfer of the equipment for any value received." From the record as a whole, we believe the district court's finding against Kevelson on this point was correct.

We thus affirm the district court's holding that Kevelson never obtained any interest in the equipment covered by the conditional sales contract. Kevelson, thus, does not now have any interest in the proceeds from the Marshal's sale of that equipment.

Affirmed.